FILED

'06 SEP -5 A11:36

CLERK

SEP -5 2006

| | | |
|---|---|---|
| Harry L. Bierley, | : | The United States District Court |
| Petitioner | : | Western District of Pennsylvania |
| V | : | Civil Action No. 04-363E |
| Warden James Veschecco, | : | Judge Mc Laughlin |
| Respondent | : | M.J. Susan Paradise Baxter |

Objections to Report and Recommendation

And now comes the petitioner, before the Honorable Court, to move for an in toto rejection of the Magistrate Judge's Report and Recommendation of 8/18/06.

1. The matter is NOT moot per the letter dated 8/16/06 from the Erie County Collections Department, as, they are still trying to extort $1,445.55 from me for illicit costs, fees, fines, and restitution..

2. It is NOT moot, because, the extreme psychological prodding and criminal defamation that I am suffering will continue unabated, if the federal court allows yet another extreme travesty of justice perpetrated against me to go unpunished like the illegal and wrongful felony "conviction" at CP 38 of 90.

3. It is NOT moot, since, to dismiss it as such would be rewarding Erie County for negligence in getting the records to the court. Every month, often times several times, a courier or lawyer is dispatched to Pittsburgh for appeals and other matters. The record on CP 1133 of 03 could easily have been copied in Pittaburgh and brought back to Erie by someone.

4. It is NOT moot, because, the "trial court" twice directly violated my rights to due process of law, when, he twice violated PaRCriP 521(B)(1). At sentencing, I asked for the right to bond pending appeal (see Tx LL 13-25) and the "court", the ADA, and my insoucient PD, whom had been forced upon me, pretended that I did not say, "I would Like That, when, I heard the "court" say I had a right to bond. At the time, due to severe sinus problems, multiple throat problems and an infection, I was unable to speak above a whisper.

5. Bierley NEVER said the words attributed to him, and, the claim that I interrupted state court proceedings is a blatant lie told to the MJ by jackels in Erie Co. DA Office. Per pages 262 (last line) and 263 (lines 1-25 incl., et al.) J Cunningham was NOT within sight or hearing range of the alleged act, and, in fact, he was NOT even in the courtroom. With the judge gone from the court room, it is assinine to say that I interrupted a court proceeding. Mr. Cunningham plainly said he saw nothing, heard nothing, and had absolutely no personal knowledge of the "crime" I was on trial for. J DiSantis read that letter into the record, but, evidently, he failed to actually put the letter in the record.
   No matter how this court views that letter, there was NOT a judge in the courtroom at the time of the alleged incident, and, without a judge therein, it is outrageous to say I interrupted with a profanity laced tirade.

Therefore, this Honorable Court should be able to see the entire prosecution would be more correctly labled a persecution. It s a despicable RUSE.

6. Even had Bierley said those words, which, HE DID NOT SAY, per Pennsylvania, U. S. Supreme Court and U.S. District Court in Eastern PA, the words were NOT chargeable as criminal in any manner either public or private.

Per Sammartino V First Judicial Court, in and for the County of Carson City, 303 F3d 959, 969-970:

> The same "reasonableness" rationale now set forth by Appellees was rejected by the Cohen Court as "plainly untenable." Id. at 23, 91 S.Ct 1780. "At most," the Cohen Court observed, 'it reflects an undifferentiated fear or apprehension of disturbance (which) is not enough to overcome the right to freedom of expression.'" Id. (quoting Tinker V Des Moines Indep. Community School District, 393 U.S. 503, 508, 89 S.Ct 733, 21 L.Ed.2d 731, (1969)). Most significantly, Cohen stands for the proposition that even in light of the purposes of the forum, it is not reasonable to prohibit speech in courthouse hallways merely because some people's sense of decorum it offends. "One man's **vulgarity** is another's lyric." the Cohen **Court** (970) emphasized., and, "it is largely because governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual." Id. at 25, 91, S.Ct 1780.

7. Also, Commonwealth V Kelly, 758 A2d 1284, PaSuper 2000 clearly states that the "offensive" words I am alleged to have said, i.e., "This is f-cking Bull Sh-t are merely contemporaneous speech.

8. Caselaw U. S. V McDermott, 971 F. Supp 939, U.S.D.C./E.D. of PA, clearly intones that "coarse and vulgar language, although distasteful, do NOT constitute a criminal act." ERSATZ, those words are/were NOT chargeable as disorderly conduct, even had they been said in a public place.

9. In Norwell V Cincinnati, 414 U.S. 14, 38 L.Ed.2d 170, 94 S.Ct 187 (1973), the Supreme Court reversed the disorderly conduct conviction of an Ohio man on the grounds that an ordinance prohibiting "noisy, boisterous, rude, insulting" conduct deprived him of his constitutional right to object to a policemen's attempt to arrest him.

Cf Braun V Baldwin, 346 F.3d 761, 777 (s)urely, one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable (order) by a police officer." Norwell V Cincinnati, 414 U.S. 14, 16, 94 S.Ct 187, 38 L.Ed.2d 170 (1973).

Most certainly, the foregoing quote would be equally applicable to when the petitioner saw J Cunningham do an extremely wrongful and provocative act, by turning his back on Mr. Karotka and leaving the courtroom without addressing the matter of a perjured affidavit that was the crux of Karotka's problems.

10. According to the legislated dictums of 18 PaCS 5503, the incident MUST have occurred in a place affecting the public, i.e., a public place. A court room, like a courthouse, is NOT a public place. See 18:5503 (a):

-2-

>   (a) Offense defined.-A person is guilty of disorderly conduct if, with
>   intent to cause **public** inconvenience, annoyance or alarm, or reck-
>   lessly creating a risk thereof, he:
>       (1) engages in fighting or threatening, or in violent or tumult-
>       ous behavior;
>       (2) makes unreasonable noise;
>       (3) uses obscene language, or makes an obscene gesture; or
>       (4) creates a hazardous or **physically** offensive condition by
>       any act which serves no legitimate purpose of the actor.

The words public and physically were emphasized above, as, neither one is properly applicable to the instant action.  It did NOT occur in a public place, and, there were absolutely NO physical acts attributed to the incident when I allegedly said those words.

>   11. A COURTROOM IS NOT A PUBLIC PLACE.
>   Payne V Pauley, 337 F.3d 767, 776: ---. In fact, the first amendment
>   protects even profanity laden speech directed at police officers.
>   City of Houston V Hill, 482 U.S. 451, 461, 107 S.Ct 2502, 96 L.Ed
>   2d 398 (1987).
>   Payne at 770 hn(1)(2): On summary judgment a court may NOT make
>   credibility determinations, weigh the evidence, or decide which
>   inferences to draw from the facts: these are jobs for a factfinder.
>   Anderson V Liberty Lobby, Inc., 477 U.S. 242,255, 106 S.Ct 2505,
>   91 L.Ed.2d 202 (1986); Betaco, Inc. V Cessna Aircraft Co., 32 F.3d
>   1126, 1138(7th Cir. 1994); Sarsha V Sears, Roebuck and Co., F.3d
>   1035, 1041(7th Cir. 1993). Rather,"(t)he court has one task and one
>   task only: to decide on the evidence of record, whether there is
>   any material dispute of fact that requires a trial." Waldridge V
>   Am. Hoechst Corp., 24 F.3d 918. 920 (7th Cir 1994).  Summary judg-
>   ment is NOT appropriate "if the evidence is such that a reasonable
>   jury could return a verdict for the nonmoving party." Anderson,
>   477 U.S. 248, 106 S.Ct 2505.

Bierley avers here, that, a jury could find that there was NOT any interruption of a court proceeding with J Cunningham's letter, and, there was NO CRIMINAL ACT per 18:5503, even were Bierley to admit to having said the words. Also, if in off the record discussions, "judge" E. DiSantis    made me react in mortal fear by failing to cross examine Esq. Tami Elkins, fearing that a small mistake would result in instant imprisonment.

Also, the list of due process of law violations that will follow this section could easily sway a jury in my favor.

>   Hammond V Adkisson, 536 F.2d 237, 239: (1) It is now clear that the
>   words must do more than offend, cause indignation or anger to the
>   addressee to lose the protection of the First Amendment. See Lewis V
>   City of New Orleans, 415 U.S. 130, 94 S.Ct 970, 39 L.Ed.2d 214 (1974);
>   Gooding V Wilson, 405 U.S. 518, 92 S.Ct 1103, 31 L.Ed2d 408 (1972).
>   See also Lucas V State, 520 S.W.2d 224, 227 (Ark.1975)(Byrd dissent-
>   ing). As theSupreme Court observed in Cox V Louisiana: Yet a"function
>   of speech under our system of government is to invite dispute. It
>   may indeed serve its high purpose when it induces a condition of
>   unrest, creates dissatisfaction with conditions as they are, or
>   even stirs people to anger.  Speech is often provocative and challeng-
>   ing. It may strike at prejudices and preconceptions and have

      profound unsettling effects as it presses for acceptance of an
      idea.  That is why freedom of speech --- is---protected against
      censorship and punishment---. There is no room under our Const-
      itution for a more restrictive view. For the alternative would
      lead to standardization of ideas either by legislatures, courts,
      or dominant political or community groups." Terminello V City of
      Chicago. 337 U.S. 1,4-5(69 S.Ct 894, 896, 93 L.Ed.2d 1131). In
      Terminello convictions were not allowed to stand because the trial
      judge charged that speech of the defendants could be punished as
      a breach of the peace" 'if it stirs the public to anger, invites
      dispute, brings about a condition of unrest, or creates a disturbance,
      or if it molests the inhabitants in the enjoyment of peace and
      quiet by arousing alarm.' Id. 337 U.S., 3(69 S.Ct 894, 895, 93
      L.Ed.1131). The Louisiana statute, as interpreted by the Louisiana
      court, is at least as likely to allow conviction for innocent speech
      as was the charge of the trial judge in Terminello.
      379 U.S. 536, 551-52, 85 S.Ct 453, 462, 13 L.Ed.2d 471, 482) ---
          Thus, even insulting speech is protected by the First Amendment
      unless it is likely to arouse anger to the extent likely to cause
      violent physical retaliation.
   Thus, the violent reaction of Esq. Randy Shapiro, to the fact that I was
helping Karotka in his quest to get the perjured affidavit exposed, was NOT
justified as allowing for him to employ the previously planned scheme between
himself, Judy Tome, and Brenda Ruffini to get me arrested.

      Sammartino V First Judicial District Court---(see 6 above) and now:
at 303 F.3d 959,966, (9) --- While public places "historically associated
      with the free exercise of expressive activities," such as streets,,
      sidewalks and parks, are considered public fora, "not all publicly
      owned property becomes a public forum simply because the public is
      permitted to come and go at the site." Jacobsen V Bonine, 123 F.3d
      1272, 1273(9th Cir.1997)(citing United States V Grace, 461 U.S. 171,
      177, 103 S.Ct. 1702, 75 L.Ed.2d 736(1983). "

      Sefick V Gardner, 164 F.3d 370, 372(7th Cir. 1998):(3,4) --- what's
      wrong with insisting that exhibits in a **federal** courthouse be dig-
      nified? The lobby of the courthouse is not a traditional public
      forum, not a place open to the public for the presentation of views.
      No one can hold a political rally in the lobby of a federal court-
      house. It is a "nonpublic forum," which government"may reserve---
      for its intended purposes". Perry Education Ass'n V Perry local
      Educators' Ass'n, 460 U.S. 37, 46, 103 S.Ct 948, 74 L.Ed.2d 794(1983).

      Kelly V Municipal Court of Marion County, S.D. Ind. 1994, 825 F Supp
      724, Aff'd 97 F 3d 902 Const Law 90.1(4): For First Amendment pur-
      poses, courtroom is not public forum or designated public forum;
      it is a forum for adjudicating rights and duties of litigants rather
      than debate hall or gathering place for public exchange of ideas.

   Thus, per the above caselaws, many of which also include references to
many United States Supreme Court Caselaws that are irrebutable, Bierley
has shown this Honorable Court, that, the charge of violating 18 PaCS 5503
requires a public place which a COURTHOUSE IS NOT. It must be reversed.

13. It is not/was not petitioner's intent to treat this court as a buffoon by giving such in depth mention to the irrebuttable fact that a courthouse and a courtroom are NOT public places, whereat, a person can erect his/her soapbox and expound his/her views, so long as it is done reasonably.

The petitioner is certain that this court is NOT a buffoon like all of his counterparts in the Pennsylvania and Erie County "judiciary". The denial of the PA Supreme of the appeal is uncontestable proof that, on the average, ALL judges in the PA System are incorrigibly criminally corrupt. That fact made it necessary for me to give the dessertation on public places to protect me from the insoucient attempts to dismiss my habeas corpus done by MJ Baxter.

14. THERE WAS AN ABSOLUTE DENIAL OF DUE PROCESS OF LAW IN CP 1133 of 03

When the matter was taken to Magesterial District Justice Jay Shimek, 06-2-01, the proper place per rule 130 of PaRCrimP, he dismissed it and refused to prosecute.

Thereafter, with total disregard for the needed Rule 132 motion required by Rule 544 for a judges order after motion, it was taken to M.D.J. Dominick Di Paolo, 06-1-05, whereat, Mr. DiPaolo denied me ALL opportunity to make bail and caused me to be imprisoned for three days while I arranged bail.

Then, M.J.D. DiPaolo sent the paperwork to M,D,J. Shimek who did again refuse to prosecute the criminal charges. We MUST assume he knew better.

Thereafter, in total disregard again for the need for a Rule 132 motion and a judge's order to transfer to another district, it was taken to M.J.D. Sue Mack, 06-1-01. She gave no attention of my protests that she did NOT have the proper requisite juris to conduct the preliminary hearing.

Thereat, despite my insistence that a court room is not a public place and that therefore 18:5503 was NOT chargeable, she bound it over to CmPlCrt.

In CmPlCrt, "judge" DiSantis completely annihilated my pretrial rights, AND, at the "trial" both on the record and off, he criminally intimidated me to gain his forced "conviction" for a crime that should NEVER have been charged.

He also further annihilated my rights per PaRCrimP 521 and denied me bond pending the appeals which was NOT discretionary in the circumstances. Had he NOT done that, the sentence would properly be awaiting a reply to my Writ of Certiorari Application in the U.S.S.C. that will be filed in one week. Of course, that means that the matter COULD NOT be moot if law were used.

Wherefore, Petitioner Harry L. Bierley does move the Honorable Sean Mc Laughlin to reject the MJ R+R in its entirety. He further moves the Court to issue a rule to the Commonwealth and require it to file a written answer to these objections and show justification for a prosecution that violated the statute it purported to enforce.

Respectfully submitted,

c.o. L. Kowalski
3123 German St
Erie, PA 16504-1073

Harry L. Bierley, pro se/in proper

On this date, September 5, 2006, a copy of my objections to the R+R was personally served upon the Erie County DA Office and the Erie County Prison for Mr. Veschecco.

Commonwealth of Pennsylvania



Erie County Court of Common Pleas  6th Judicial District
08/16/2006

Harry Bierley
C/O L Kowalski
3123 German St
Erie, PA  16504-1073

RE:  CP-25-CR-0001133-2003   Comm. v. Bierley, Harry

Bierley:

Our records indicate that you are now more than thirty-two (32) days past due concerning the payment of the court-ordered costs, fines, restitution, and fees in the above-captioned case(s).

As of the date of this letter, you owe $50.00 towards your total outstanding balance of $1,445.55.  Please forward payment immediately. DOCKET NUMBER MUST BE INCLUDED WHETHER PAYING IN PERSON OR BY MAIL.  See enclosed payment instructions.

You are hereby instructed to call the Collections Enforcement Officer/Supervisor highlighted below if you are unable to pay the past due amount:  Molly Marchionna - 814-451-7075;     Richard Atkinson - 814-451-7076; Philip Legler - 814-451-6441;     Paul Ketchum - 814-451-6442

Failure to pay the past due amount may result in the following action(s) being taken against you including but not limited to:

1) Notification of violation to your County Probation / State Parole officer
2) Notification to the PA Department of Welfare of your non-compliance
3) Suspension of your driver's license
4) Contempt of court proceedings being instituted against you
5) A warrant for your arrest being issued

Sincerely,

Erie County Adult Probation
Collection Bureau

Recipient: Harry Bierley (Responsible Participant)
AOPC 2212 REV. 08/16/2006                                                                                       Printed: 08/16/2006  8:38:38AM